Latrobe Steel Company and Pennsylvania Manufacturers' Association Insurance Co., Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Geraldine Dominick, Widow of Richard Dominick, deceased, Respondents.

Argued November 2, 1978, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*H. Reginald Belden, Jr.*, with him *Stewart, Belden, Sensenich & Herrington*, for petitioners.

*John M. Campfield*, with him *Scales and Shaw*, for respondents.

OPINION BY JUDGE MACPHAIL, April 2, 1979:

Richard Dominick (Employee) died April 20, 1974, at his place of employment in the hammer shop of Latrobe Steel Company (Employer). His widow, Geraldine Dominick (Claimant) on behalf of herself and four minor children filed a claim petition for workmen's compensation benefits. The referee found that the Employee suffered a work-related injury which resulted in his death and awarded benefits to the Claimant. The Employer appealed to the Workmen's Compensation Appeal Board (Board) which affirmed the referee. In the subsequent appeal to this Court, Employer contends that there was insufficient unequivocal clear evidence upon which to base a finding that the Employee died as the result of electrocution.

To say the least, the factual context is interesting. No one was with the Employee when he died. However, the record is clear that the Employee reported for work at his customary time and appeared to be in good health immediately prior to his body being found. Shortly after arriving for work, he was heard to say that it was hot. When last seen he was proceeding in the direction of a man-cooling fan. A few minutes later he was found by a fellow employee lying face down with a cable from the fan across his right leg. The condition of the fan at and prior to the Em-

ployee's death can best be summarized as hazardous. Testimony before the referee indicated that some employees were so distrustful of the fan that they would cut off the main source of power before plugging it in. Immediately after the accident, the fan was tested for leakage, and some was detected. The fan was then removed and completely overhauled.

Claimant's medical witness was the Coroner of Allegheny County, Dr. Cyril H. Wecht. The Allegheny County Coroner's office (upon the examination of another pathologist) first determined that the Employee died from natural causes. After an exhumation and re-examination of Employee's body, Dr. Wecht testified that in his opinion the Employee died as the result of electrocution. He did say that he could not testify with a reasonable degree of medical certainty that the mechanism of death was ventricular fibrillation or a depression of the medullar centers or both. He found physical evidence on the Employee from which he opined that electric current entered the Employee's body through the right hand and exited through the Employee's right foot.

The Employer presented the testimony of an electrical engineer who conducted tests on the boots worn by the Employee at the time of his death. That witness said that on the basis of those tests and an examination of the boots themselves, and given the facts and circumstances regarding the voltage and other conditions relating to the fan, it would have been impossible for the Employee to have absorbed enough electrical current to create the sensation of a shock let alone electrocute the Employee. The Employer also called a pathologist who had not examined the Employee's body but who read all of the reports and testimony concerning the happening of the accident and its alleged causes. In answer to a hypothetical question the witness testified that he could find no

positive evidence that the Employee's death occurred by reason of electrocution. He testified further that he could "almost" say that if the Employee did die from electrocution, such a conclusion "flies in opposition to all the recognized criteria relating to electrical current and electrocution therefrom." The referee stated in his discussion of the case that he found that the evidence submitted by the Employer lacked credibility.

Our scope of review since the Claimant prevailed in the administrative process is to determine whether constitutional rights were violated, an error of law was committed or findings were not based upon substantial evidence. *Workmen's Compensation Appeal Board v. Young*, 18 Pa. Commonwealth Ct. 515, 336 A.2d 665 (1975). No constitutional issues have been raised in this appeal. The Employer's sole contention is that the referee's findings were not based upon substantial evidence because the crucial testimony of Dr. Wecht is contrary to scientific fact and in any event was equivocal.

Employer argues that this is not the usual "substantial evidence" issue to be decided under our holding in *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Employer contends that since Dr. Wecht's opinion that the Employee died from electrocution was based upon the assumption that the electricity exited through the Employee's right foot and since it would have been scientifically impossible for the current to have exited through the Employee's boot, we must conclude that the opinion expressed by Dr. Wecht is invalid. A somewhat analogous argument was presented to us in *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board*, 40 Pa. Commonwealth Ct. 611, 398 A.2d 725 (1979). There, it was contended that Claimant's evidence was contrary to "universal scientific fact."

There, as here, the referee found that the evidence to prove the universal scientific fact simply was insufficient to do so. We held in *Bethlehem Mines* that where we cannot say *as a matter of law* that the testimony of the witness *is* contrary to scientific principles, the question of the conflict in the evidence is still for the fact-finder to resolve. Precisely the same issue is before us now. Claimant's expert stated that the conditions which existed in the area where the Employee was found, together with the conditions he found on the Employee's body, were sufficient to support his opinion that the Employee died from electrocution. The Employer's witnesses stated that from an examination of the boot and the consideration of all of the other relevant facts, Employee could not have died from electrocution. As in the *Bethlehem Mines* case, we simply must conclude that the record is insufficient to support a conclusion as a matter of law that the scientific principles involved in this case prohibit a finding that the Employee died from electrocution.

Concerning Employer's second argument, that Dr. Wecht's testimony is equivocal, we note initially that his direct testimony was as follows:

Q. Dr. Wecht, do you have an opinion based upon a reasonable degree of medical certainty, and based upon your knowledge and experience as a pathologist and forensic pathologist, and based upon your investigations and examinations and autopsies in this matter in Richard Dominick as to his cause of death?

A. Yes.

Q. What is your opinion, Doctor?

A. In my opinion Mr. Dominick died as a result of electrocution.

He also testified that while he "believed" that the *mechanism* of death was "most possibly" ventricular

fibrillation, he could not document that conclusion "at the autopsy table" because there was also the possibility that the *mechanism* of death was the result of an adverse physiological effect upon the medullary center. Thus, it is apparent from the record that while Dr. Wecht may have been equivocal as to the "mechanism" of death, his opinion as to the *cause* of death was unequivocal.

Moreover, the requirement of unequivocal medical testimony must now be read in the light of our holdings in *Harrisburg Housing Authority v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 413, 322 A.2d 753 (1974), *Workmen's Compensation Appeal Board v. Bowen,* 26 Pa. Commonwealth Ct. 593, 364 A.2d 1387 (1976), and *Frank Williams Plumbing v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 588, 396 A.2d 68 (1979).

We conclude that there was sufficient substantial evidence to support the referee's findings and that there were no errors of law.

Order affirmed.

## ORDER

AND Now, this 2nd day of April, 1979, the order of the Workmen's Compensation Appeal Board, filed August 11, 1977, is affirmed. Judgment is entered against Latrobe Steel Company, defendant, and/or Pennsylvania Manufacturers' Association, insurer, who are hereby ordered to pay to the Claimant, Geraldine Dominick on behalf of herself and her dependent children, Cynthia, Jeffrey Paul, Randall Allan and Deneen Marie, the sum of $106.00 per week from April 21, 1974, until September 2, 1979, and then at the same rate for herself and her dependent children, Jeffrey Paul, Randall Allan and Deneen Marie until March 3, 1982, and then at the same rate for herself and dependent children, Randall Allan and Deneen

Marie until August 7, 1984, and then at the same rate for herself and her dependent child, Deneen Marie, until March 20, 1988, and thereafter at the rate of $106.00 per week for herself as provided by The Pennsylvania Workmen's Compensation Act, as amended.

It is further ordered that the defendant and/or the insurer pay the Bill of Costs as set forth in the referee's Finding of Fact Nos. 28 and 29 in the total amount of $2,032.45, that they reimburse the Claimant for reasonable burial expenses in the sum of $750.00, and that they pay interest at the rate of 10 per cent per annum on all compensation due and owing to the Claimant.

Finally, it is ordered that the defendant and/or its insurer remit to John Campfield, Esquire, counsel fees in the amount of 20 percent of back compensation due and owing. It is so ordered.