Astro Remodeling and Westmoreland Casualty Company, Petitioners *v.* Workmen's Compensation Appeal Board (Julye), Respondents.

Argued December 5, 1983, before President Judge CRUMLISH, JR., and Judges WILLIAMS, JR., and BLATT, sitting as a panel of three.

*Earl T. Britt,* with him *Lewis R. Olshin and Marcie J. Weintraub, Duane, Morris & Heckscher,* for petitioners.

*Sidney E. Herold,* for respondents.

OPINION BY JUDGE BLATT, March 1, 1984:

Astro Remodeling and Westmoreland Casualty Company (petitioners) appeal an order of the Work-

men's Compensation Appeal Board (Board) which set aside a final receipt, thereby granting benefits, and also denied a claim for a subrogation credit.

On December 5, 1975, Benjamin Julye (claimant) was injured in a vehicular accident while in the scope of his employment, and began receiving compensation. On May 24, 1976, while still receiving benefits but not yet fully recovered from the original injury, the claimant accepted employment elsewhere. On July 12, 1976, he signed a final receipt which his attorney did not deliver to the employer until April of 1977 due to third party litigation arising out of the original injury, which was settled for $60,000. In June of 1977, he again began suffering from his original injury, and in August of that year he was hospitalized and received a laminectomy. In February of 1978, he was able to return to light work with limited lifting and bending restrictions.

Where the party with the burden of proof has prevailed before the Board, our scope of review is limited to determining whether or not constitutional rights were violated, errors of law were committed, or necessary findings of fact are unsupported by substantial evidence. *Schiavo v. Workmen's Compensation Appeal Board (Frank's Beverages)*, 68 Pa. Commonwealth Ct. 479, 449 A.2d 816 (1982). Furthermore, when the claimant resumes work with either no loss of earning power or no obvious residual disability, the clear and convincing evidence necessary to show a continuing disability must be established by unequivocal medical testimony. *Akers Central Motor Lines v. Workmen's Compensation Appeal Board*, 44 Pa. Commonwealth Ct. 185, 403 A.2d 206 (1979).

Section 434 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as*

*amended,* 77 P.S. §1001, provides, in pertinent part, as follows:

> Provided, however, That a referee designated by the department may, at any time within three years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated.

The petitioners contend here that the Board lacked competent evidence to establish the necessary causal link between the original injury of 1975 and claimant's laminectomy in 1977. They argue, specifically, that the hypothetical question, upon which the claimant's expert based his opinion, contained facts not in evidence and facts contrary to the evidence. The hypothetical question at issue contained, *inter alia,* the following assumption, which the petitioners dispute: that the claimant's "chief complaint" at the time of the original injury related to his lower back.

Although it is always a better practice to phrase hypothetical questions upon facts in evidence, it is not reversible error to accept such an opinion based upon a summary of the evidence, *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board,* 11 Pa. Commonwealth Ct. 369, 314 A.2d 48 (1974), or when the difference in the actual facts and the assumed facts is not "so great" as to render the question improper. *United States Steel Corporation v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 250, 253, 422 A.2d 1243, 1244 (1980). Although there is admittedly conflicting testimony concerning here as to what claimant's "chief" complaint was at the time of the first injury, our re-

view of the record, which includes, *inter alia,* the claimant's testimony and relevant medical documents, persuades us that there is no significant difference between the actual fact and the assumed fact. We believe, therefore, that the hypothetical question was properly admitted.

The petitioners next contend that the expert's opinion failed to rise to the level of unequivocal medical testimony. In *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983) our Court articulated its construction of the unequivocal medical testimony rule, which is as follows:

> [I]t is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, *even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details: so long as the witness does not recant the opinion or belief first expressed.* (Emphasis added.)

*Id.* at 206, 465 A.2d at 135.

The petitioners argue, of course, that the expert's opinion fails to meet the legal test articulated above because he stated that:

> I think that over that year the injury that he sustained to his back produced the degeneration process that continued over the year that when he finally became active the disc actually bulged and herniated and I therefore feel that it is compatible with his injury of December 1976, or December 1975.

(Petitioners' Reproduced Record at 22a.) The petitioners argue that, because the expert uses the word "compatible", the opinion fails for want of certainty. A plain reading of *Philadelphia Osteopathic College,* however, allows the witness to admit to "uncertainty", or "doubt", "so long as the witness does not recant the opinion." *Id.* We believe, therefore, that the opinion was clearly within the acceptable parameters of *Philadelphia Osteopathic College.*

The petitioners further contend that the Board erred in denying a subrogation credit for the claimant's third-party recovery. Section 319 of the Act, 77 P.S. §671 provides in pertinent part as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer,

. . . .

The subrogation rights of the employer under Section 319, 77 P.S. §671, however, are altered when third party litigation arises under the Pennsylvania No-Fault Motor Vehicle Insurance Act. In *Vespaziani v. Insana,* 501 Pa. 612, 462 A.2d 669 (1983), which we note was decided *after* the Board's decision in this case, our Supreme Court held that:

[A] subrogation claim of a workmen's compensation carrier is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of the first $15,000 of work loss sustained. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim

for recovery of benefits payable has not been affected by the No-Fault Act.

*Id.* at 619-20, 462 A.2d at 673.

Inasmuch as the Board did not know of nor follow *Vespaziani,* we will reverse and remand for findings of fact and an order consistent therewith.

ORDER

AND Now, this 1st day of March, 1984, the order of the Workmen's Compensation Appeal Board is hereby affirmed in part but also reversed and remanded in part: i.e. as to the denial of subrogation credit. Jurisdiction relinquished.