Harry S. Fessler, Deceased, by Virginia Lee Fessler, Widow, Petitioner *v.* Workmen's Compensation Appeal Board (Nationwide Insurance Company), Respondents.

Argued September 10, 1984, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Elliot A. Strokoff, Handler, Gerber, Johnston, Strokoff & Cowden,* for petitioner.

*Thomas E. Wood, Keefer, Wood, Allen & Rahal,* for respondent, Nationwide Insurance Company.

OPINION BY JUDGE MACPHAIL, November 28, 1984:

Harry S. Fessler (Decedent) suffered a myocardial infarction and died February 10, 1976, in the course of his employment as an insurance underwriter with Nationwide Insurance Company (Employer). His widow, Virginia Lee Fessler (Claimant), filed a fatal claim petition. The matter was first heard by a referee who denied benefits in March of 1978. When the Claimant appealed, the case was remanded by the Workmen's Compensation Appeal Board (Board) for further findings in an order dated December 7, 1978. Although the referee fixed a date for a further hearing, no evidence was presented. Based upon arguments of counsel heard at that time, the referee in

December of 1980 again denied benefits. When the Claimant appealed a second time, the Board again remanded by an order dated November 5, 1981. This time, additional evidence from the Employer was received by the referee who, for the third time denied benefits in a decision filed in October of 1982. Finally, on December 1, 1983, the Board affirmed the referee's denial of benefits. This appeal followed.[1] We reverse.

There seems to be basic agreement on some of the critical facts in this case. The Decedent died at work while in the midst of a telephone call on the Employer's business with another employee. He had complained of chest pains to the Employer's nurse the morning of his death. Her advice to him to call his physician was not heeded. Decedent had been examined for heart problems in the summer of 1974. He was under a physician's care for more than a year. He was diagnosed as having atherosclerosis and hypertension. Coronary heart disease was suspected. The doctor recommended that he refrain from working for awhile. Eventually, however, he went back to work part-time and then full time in November of 1975. He died of a heart attack or myocardial infarction.

Claimant's evidence consisted of her own testimony, testimony from the Employer's nurse, the Employer's assistant personnel manager, the Decedent's immediate supervisor and a deposition from the Decedent's treating physician, Dr. Jackson.

---

[1] While the delays in this case may have some proper basis, we must observe that it is not in the best interest of justice for cases to be in-the administrative process for more than seven years before a final decision is reached especially where the record is so minimal. The issue is a difficult one to be sure, but undue contemplation does not make it any easier to resolve.

On the basis of that evidence, the referee in 1978 made the following critical findings:

12. That Claimant failed to produce medical evidence to prove a causal relationship between decedent's death and his employment on February 10, 1976.

13. That Claimant failed to meet the burden of proof to establish decedent suffered an injury while in the course of his employment with the defendant on February 10, 1976, within the meaning of the Workmen's Compensation Act.

He concluded that since the Claimant *had failed to establish an injury,* the claim petition should be denied.

The basis of Claimant's first appeal to the Board in 1978 was that the referee was using the pre-1972 amendment to Section 301(c) of The Pennsylvania Workmen's Compensation Act,[2] the "injury" test. The Board agreed and remanded the case with instructions to decide the "only issue" in the case, which they said was whether there was a causal connection between the Decedent's work and his heart attack. Apparently no one, not even the referee, protested to the Board that the referee had already made that determination in finding of fact number twelve.

As we have noted, no additional evidence was received by the referee at the remand hearing. The referee's critical findings following the remand were:

15. That Claimant failed to present evidence of record to show any specific incident or particular action relating to decedent's alleged stress of work.

---

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411.

16. The evidence of record fails to support and substantiate the alleged stress, allegedly encountered by defendant, (sic) in his employment with the defendant, was the cause of decedent's myocardial infarction.

17. That claimant failed to produce evidence of record to support and substantiate a causal relationship between decedent's death and his employment with the defendant on February 10, 1976.

18. That claimant failed to prove her decedent-husband suffered an injury on February 10, 1976, within the meaning of the Workmen's Compensation Act, as amended.

Again the Claimant appealed to the Board on the ground that the referee was still applying the "accident" test and again the Board agreed with the Claimant. Without any reference to the referee's specific findings regarding causal relationship, the Board noted that stress itself and the injured person's inability to deal with it can be causally related to employment. *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board,* 59 Pa. Commonwealth Ct. 558, 430 A.2d 399 (1981). The Board then remanded this case to the referee with instructions that *"either* party may submit any additional evidence which is germane to the case." (Emphasis added).

The referee dutifully held a third hearing at which the deposition of Dr. Moffitt, a medical witness for the Employer, was received over Claimant's objection. This witness, who testified from medical records only, stated that in his opinion the Decedent's stress at work did not contribute significantly to his heart attack and that the Decedent's heart attack was the result of the progression of the hardening of the

arteries, including the coronary arteries. For the third time, the referee stated in his findings that Claimant failed to prove that the Decedent's heart attack was causally related to his employment. The referee also stated that he was persuaded in reaching this conclusion *by the testimony of Dr. Moffitt.*

The Claimant appealed to the Board a third time and this time the Board finally noted that the referee had indeed found that the Claimant had failed to prove the causal relationship between the Decedent's employment and his heart attack and that the referee was persuaded by the testimony of Employer's medical witness. Citing case law which holds that the referee is the ultimate fact finder, the Board denied the claim.

This rather extensive review of the proceedings was necessary to highlight the fact that in our opinion, neither of the two remands in this case was necessary. The Board may remand when ''the findings are not supported by the evidence or where a necessary finding was not made.'' *Lehigh Valley Coal Sales Co. v. Workmen's Compensation Appeal Board,* 66 Pa. Commonwealth Ct. 59, 64, 443 A.2d 1339, 1342 (1982). In the instant case, it was an error of law for the Board to remand on either occasion because the referee had made the appropriate fact finding pertaining to the causal connection after the first and second hearings. We conclude, accordingly, that the deposition of Dr. Moffitt should not have been considered by the referee or the Board.

We will, accordingly, review the medical testimony of Dr. Jackson bearing in mind that in this appeal since the referee and the Board found that the Claimant failed to meet her burden, we must affirm unless constitutional rights were violated, an error of law was committed or competent evidence was capriciously

disregarded. *Kerchner v. Materials Transport Service, Inc.*, 29 Pa. Commonwealth Ct. 589, 372 A.2d 51 (1977).

When no obvious causal connection exists between an employee's condition and a work injury, unequivocal medical evidence must be produced to establish that connection before the employee is entitled to workmen's compensation benefits. *Pines Plaza Lanes v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 139, 433 A.2d 165 (1981). Where the issue in a workmen's compensation case is, as it is here, whether death was a product of a work related injury, a pre-existing pathology, or both, the Claimant must establish by unequivocal medical evidence that the Decedent's work activities aggravated the pre-existing condition, thereby contributing to his death. *Modern Transfer v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 592, 408 A.2d 900 (1979).

Our Court has recently reviewed the unequivocal medical testimony rule in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa. Commonwealth Ct. 202, 206, 465 A.2d 132, 135 (1983), by holding that ''as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist.''

We have also held that the fact finder must determine from the entire medical testimony whether or not the Claimant's burden has been met, rather than from selected portions thereof. *Bardo v. Workmen's Compensation Appeal Board,* 62 Pa. Commonwealth Ct. 497, 437 A.2d 456 (1981). Whether or not medical evidence is equivocal or unequivocal requires a determination of its competency, not its credibility,

and our duty is to review the record to determine whether the medical evidence was unequivocal and the referee's disregard of it improper. *Roeberg Enterprise, Inc. v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 308, 400 A.2d 911 (1979).

In light of that guidance from our previous cases, our conclusion is that Dr. Jackson's testimony viewed as a whole, is sufficient to sustain Claimant's burden and that the referee and the Board capriciously disregarded it. Dr. Jackson was testifying from a history he had personally recorded and from treatment he personally administered. The gist of his testimony is that the Decedent was an accident waiting to happen. There was ample evidence to support the doctor's conclusion that the Decedent was under constant stress which was job related. Even though the Employer gave the Claimant a less stressful job following his first lay-off due to heart and hypertension problems, the Claimant not only insisted upon working full time but also worked overtime just prior to his fatal attack. The doctor's testimony was positive regarding the fact that the Decedent died from a heart attack and that there was enough work-related stress to be a *very significant* factor in the myocardial infarction. There is a fine line, indeed almost indistinguishable at times, between clearly unequivocal medical testimony and medical testimony which is couched in less than positive terms because the witness is unable to rule out all other factors with reasonable medical certainty when expressing a medical opinion. The language focused upon by the referee does not in this case render the doctor's testimony equivocal because medical science is not capable of absolute certainty in all matters and some opinions necessarily must be judgmental.

Under the facts and circumstances of this case, where the Decedent reported to the company nurse upon arriving at work and died at work shortly after in the midst of a telephone call related to his employment, with a history of serious physical problems related in the physician's opinion to the Decedent's stressful work atmosphere, we believe Dr. Jackson's deposition is adequate to satisfy the test of unequivocal medical evidence in support of the Claimant's claim and the referee's failure to recognize it as such is capricious disregard of competent evidence.

Order reversed.

ORDER

The order of the Workmen's Compensation Appeal Board dated December 1, 1983 and entered to Docket No. A-84822, is reversed.